IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CR-326-D

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| BRIDGETT RENETTIER BURROWS, | ) |
| | ) |
| Defendant. | ) |

On August 14, 2023, Bridgett Renettier Burrows ("Burrows" or "defendant"), proceeding pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 50]. On October 26, 2023, Burrows, through counsel, filed a memorandum in support of her compassionate release motion and several exhibits [D.E. 53]. On December 1, 2023, Burrows filed a supplemental memorandum and medical records [D.E. 59]. On December 6, 2023, the government responded in opposition [D.E. 62]. On April 30, 2024, Burrows filed another supplemental memorandum and medical records [D.E. 64]. As explained below, the court denies Burrows's motion for compassionate release.

I.

On April 7, 2022, pursuant to a written plea agreement, Burrows pleaded guilty to conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin and 400 grams or more of a mixture containing a detectable amount of fentanyl (count one) and possession with intent to distribute 400 grams or more of a mixture containing a detectable amount of fentanyl (count two). See [D.E. 28, 30]. On August 10, 2022, the court held Burrows's sentencing hearing. See [D.E. 43, 44, 49]. At the hearing, the court adopted the facts set forth in

the Presentence Investigation Report ("PSR"). See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent. Tr. [D.E. 49] 4–5. The court calculated Burrows's total offense level to be 29, her criminal history category to be III, and her advisory guideline range to be 120 to 135 months' imprisonment. See PSR [D.E. 56] ¶ 58; Sent. Tr. 5. After granting the government's downward departure motion and thoroughly considering all section 3553(a) factors, the court sentenced Burrows to 90 months' concurrent imprisonment on each count. See Sent. Tr. 5–7, 17–21; [D.E. 43, 44]. Burrows did not appeal.

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense

2

based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist, and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 117–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); United States v. Davis, ___ F.4th ___, 2024 WL 1662931, at *6–7 (4th Cir. Apr. 18, 2024); McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). U.S.S.G. § 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily

3

injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b). A defendant's rehabilitation alone is not an extraordinary or compelling reason, but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted." U.S.S.G. § 1B1.13(d). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. U.S.S.G. § 1B1.13(e).

Burrows applied to her warden for compassionate release. See [D.E. 50-1] 1. On July 21, 2023, Burrows's warden denied her application. See id. Therefore, the court addresses Burrows's motions on the merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

Burrows seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Burrows argues that extraordinary and compelling circumstances exist because: (1) she has several medical conditions which raise her risk of severe illness or death from COVID-19, (2) her correctional facility is unsafe,[1] and (3) she has made positive efforts at rehabilitation. See [D.E. 50] 1–2; [D.E. 53] 2–8; [D.E. 59, 64].[2]

---

[1] Burrows complains about the conditions at FCI Danbury. See [D.E. 50] 1–2. BOP has since transferred Burrows to FPC Alderson. See [D.E. 64] 3 n.1. Accordingly, this argument is moot.

[2] Burrows also asks the court to "review her sentencing and adjust" her sentence under Amendment 821 of the United States Sentencing Guidelines. [D.E. 50] 2. Amendment 821 does not apply to Burrows because at the time of her sentencing, she was not a zero-point offender and she did not receive status points. See U.S.S.G. app. C, amend. 821; PSR ¶¶ 19, 53.

4

As for the "medical circumstances of the defendant" policy statement, the policy statement requires, in part, that the defendant be "housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;" be "at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency" because of "personal health risk factors and custodial status"; and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D). "To establish that the risk posed by COVID-19 presents an 'extraordinary and compelling reason' for release [under this subsection], a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that [her] preexisting medical condition increases [her] risk of experiencing a serious, or even fatal, case of COVID-19." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (quotation and alteration omitted); see High, 997 F.3d at 185. This "inquiry is multifaceted and must account for the totality of the relevant circumstances." Bethea, 54 F.4th at 832 (quotations omitted); see Hargrove, 30 F.4th at 198. Courts examine whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at [her] prison facility." Brown, 78 F.4th at 128 (quotation omitted); see Hargrove, 30 F.4th at 196.

Burrows alleges she has COPD, asthma, type 1 and type 2 diabetes mellitus with neuropathy, a history of heart failure and hypertension, rheumatoid arthritis, a compromised immune system, sleep apnea, hyperlipidemia, vitamin D deficiency, retinal detachment, atopic dermatitis, dependence on supplemental oxygen, and chronic kidney disease. See [D.E. 50] 1; [D.E. 50-1] 10, 49, 53, 57–58, 60, 62–63, 65–66, 68, 82–83, 88, 90–91, 95; [D.E. 53] 3–7; [D.E.

5

53-6] 2, 23–24, 51–52, 58, 69, 71, 85, 87–88, 127–28, 209, 228, 230, 241, 252–53; [D.E. 53-7] 31; [D.E. 59]; [D.E. 64]; [D.E. 64-1] 4, 15–16, 23–25, 91, 301–03.

Burrows is fully vaccinated against COVID-19. See [D.E. 53-6] 89. The vaccine provides protection against COVID-19. See, e.g., Davis, 2024 WL 1662931, at *4; United States v. Salas, No. 22-6371, 2023 WL 3918695, at *2 (4th Cir. June 9, 2023) (per curiam) (unpublished) ("[I]t is undisputed that Salas's risk is lowered due to his vaccination status."); United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an

6

inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Burrows from COVID-19 whether she is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Thus, Burrows fails to show any "particularized susceptibility to COVID-19." Brown, 78 F.4th at 128 (quotation omitted).

Burrows also fails to show "a particularized risk of contracting the disease at [her] prison facility." Brown, 78 F.4th at 128 (quotation omitted). BOP houses Burrows at FPC Alderson. See [D.E. 64] 3 n.1. BOP has vaccinated 353 inmates at FPC Alderson and has zero open cases of COVID-19 among inmates. See BOP, Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited May 3, 2024). BOP's aggressive vaccination efforts and robust COVID-19 procedures decrease Burrows's risk of contracting the disease at FPC Alderson. See id. Therefore, reducing Burrows's sentence because of her risk factors and the general risk of COVID-19 in the prison environment does not comport with U.S.S.G. § 1B1.13(b)(1)(D). See 18 U.S.C. § 3582(c)(1)(A); see, e.g., Davis, 2024 WL 1662931, at *4.

To the extent Burrows argues her medical conditions are extraordinary and compelling circumstances independent of COVID-19, the relevant policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Burrows alleges she "has lost the function of her upper extremities and struggles to perform activities of daily living." [D.E. 64] 2. Her medical records show that she has "restricted use of her hands," but that

7

"inmate companions" can assist her with activities such as "button[ing] her shirt or [tying] her shoes." [D.E. 64-1] 16, 24. BOP provides "intensive OT/PT" to Burrows to help this condition. Id. at 16. BOP also has been treating Burrows's other medical conditions, including giving her insulin, supplemental oxygen, a wheelchair, and a walker. See, e.g., id. at 35, 193–94, 213. Accordingly, reducing Burrows's sentence because of her medical conditions does not comport with U.S.S.G. § 1B1.13(b)(1)(B).

Burrows also cites her rehabilitation efforts. See [D.E. 50] 2; [D.E. 53] 8–10. Burrows has completed classes and held some employment while federally incarcerated. See [D.E. 53-12, 53-13]. Burrows has not incurred any disciplinary infractions. See [D.E. 53-14]. These positive steps, however, are already reflected in Burrows's good-time credits. See id.; [D.E. 53] 1 & n.1. Moreover, Burrows's positive efforts are expected of inmates. See, e.g., United States v. Mitchell, No. 8:11-cr-525, 2024 WL 129761, at *4 (D. Md. Jan. 11, 2024) (unpublished); United States v. Anderson, No. 3:17cr80-08, 2023 WL 7285411, at *3 (E.D. Va. Nov. 3, 2023) (unpublished); United States v. Baines, No. 1:13CR255-2, 2022 WL 706779, at *5 (M.D.N.C. Mar. 9, 2022) (unpublished). Burrows's evidence falls short of demonstrating she has been "a model inmate." Davis, 2024 WL 1662931, at *6. Accordingly, the court declines to grant Burrows compassionate release on this basis. See U.S.S.G. § 1B1.13(d).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Burrows's medical conditions, Burrows's rehabilitation efforts, and Burrows's reentry plan are extraordinary and compelling reasons under section 3582(c)(1)(A). The section 3553(a) factors, however counsel against reducing Burrows's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

8

Burrows is 55 years old and is incarcerated for conspiracy to distribute and possession with intent to distribute one kilogram or more of heroin and 400 grams or more of a mixture containing a detectable amount of fentanyl and possession with intent to distribute 400 grams or more of a mixture containing a detectable amount of fentanyl. See PSR ¶¶ 1–10. A confidential witness ("CW") identified Burrows as a heroin dealer involved in an interstate drug trafficking organization and recounted three times when Burrows sold drugs to the CW. See id. at ¶ 7. On September 26, 2020, law enforcement officers stopped Burrows for a traffic violation on I-85 in North Carolina. See id. at ¶ 8. Burrows's 10-year-old granddaughter was a passenger in the vehicle. See id. Burrows began acting nervously and consented to a search, during which officers found 1.02 kilograms of a mixture of heroin and fentanyl. See id. Burrows was responsible for a total drug weight of 1,850 grams of heroin and 1.02 kilograms of fentanyl, or 4,400 kilograms of converted drug weight. See id. at ¶ 10. Burrows is a violent recidivist with convictions for aggravated assault recklessly causing injury, possession of a firearm for an unlawful purpose, attempted aggravated assault - attempt/cause significant injury, and theft by unlawful taking. See id. at ¶¶ 15–18.

Burrows has taken some positive steps while incarcerated. Burrows has completed some educational classes. See [D.E. 53-12]. She has held employment while incarcerated. See [D.E. 53-13]. Burrows has not incurred any infractions. See [D.E. 53-14].

The court has considered Burrows's risk for exposure to COVID-19, her medical conditions, her positive efforts while incarcerated, and her release plan. Cf. Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the BOP's actions to address COVID-19, the section 3553(a) factors, Burrows's arguments, the government's persuasive response, Burrows's serious criminal conduct

9

and serious criminal history, Burrows's rehabilitation efforts, and the need to punish Burrows for her serious criminal behavior, to incapacitate Burrows, to promote respect for the law, to protect society, and to deter others, the court declines to grant Burrows's motion for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 50].

SO ORDERED. This _3_ day of May, 2024.

                                          JAMES C. DEVER III
                                          United States District Judge